# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

====================================

## ON MOTION FOR REHEARING

====================================

### NO. 03-04-00426-CR

**John Bailey Lasater, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 2022764, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We overrule appellant's motion for rehearing, withdraw our opinion and judgment dated July 7, 2006, and substitute the following in its place.

Appellant John Bailey Lasater was indicted for unlawful use of a pen register or trap and trace device.[1] After his motion to suppress was denied, he pleaded guilty and was sentenced to twenty months' confinement. The trial court suspended imposition of the sentence and placed him

---

[1] It is a state jail felony to knowingly install or use a pen register or trap and trace device to record or decode electronic or other impulses for the purpose of identifying telephone numbers dialed or otherwise transmitted on a telephone line. Tex. Penal Code Ann. § 16.03 (West 2003). There are several statutory affirmative defenses that are inapplicable to this case. *See id*.

on community supervision for five years.  In his sole issue, he contends that the trial court erred by denying his motion to suppress evidence obtained during what he contends was an individual's criminal trespass in his home.  *See* Tex. Penal Code Ann. § 30.05 (West Supp. 2006) (criminal trespass); *see also* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).  We will affirm the judgment.

## BACKGROUND

For two years, Terri Howell and appellant lived on separate sides of a duplex.  They became good friends, but were not involved romantically.  Appellant gave Howell a key to his house.  He testified that she had a key because she cleaned his house occasionally to make extra money, but denied ever giving Howell general authorization to enter his house.  Howell testified that appellant allowed her entry to clean his house, to feed his cat during hunting season when appellant was away, to use his telephone, to watch his television, to use his shower, and to use his computer for Internet access, "burning" compact discs, and paying her bills.

During the two years that they were neighbors, she entered his house approximately fifteen to twenty times to use his computer.  She denied that appellant ever prohibited her from going into any location in the house.  Rather, he told her that she did not need to request his permission to enter at any time to use his computer, clean his house, or find her cat; he told her to "just to go right ahead."  Howell testified that appellant's house had two cat doors, one on the front of the garage and another leading into appellant's house, and that her cat often entered appellant's garage to eat the food that appellant left for his own cat.  Howell's cat required medication, and appellant told Howell

2

"several times" that if she needed to give her cat its medicine or find it, she could enter appellant's garage or house.

In September 2000, approximately three months after Howell moved next door to appellant, she began to suspect that he was listening to her telephone calls. Appellant seemed to know things about Howell that she could not remember telling him. She recalled that appellant sent her a "get well" card after she underwent a biopsy, which she thought "was very weird because he did not know about that." She became more conscious of what information she discussed on the telephone, but she only suspected his eavesdropping based on his extra knowledge; she had no proof that appellant was doing anything improper or illegal.

In January 2002, Howell placed a "test phone call" in which she told a friend that she was pregnant in order to determine whether appellant was listening. Shortly after the call, appellant invited Howell to dinner and told her to order anything she was "craving." Howell concluded that "either it was just a coincidence that he happened to say the word crave, or he actually had been listening to the phone calls. So I pretty much thought that maybe he had been listening to my phone calls by using that choice of words after I had just pretended to tell my friend that I was pregnant."

The next month, a friend suggested that Howell speak with another friend who worked for the Texas Department of Public Safety. The DPS employee ran a background check on appellant[2] and advised her to check her phone lines. Howell later informed him that she had contacted the phone company but "all they could do was say whether the phones were working

---

[2] The record does not include any other evidence of an investigation into appellant's activities at that point.

3

correctly or not, and they said the phones were working correctly." The DPS employee offered to speak to appellant for Howell, but Howell declined because she was still uncertain about whether appellant was eavesdropping on her calls and "the last thing" she wanted was to "cause friction" with her neighbor, whom she considered her "friend."

In May and June, Howell observed notations on appellant's calendar that caused her to believe that she was being stalked. On July 9, 2002, Howell called appellant and received permission to use his computer to "burn" some compact discs. According to Howell, appellant also advised her that if she needed to find her cat to administer its medication, she should check his garage because he had seen her cat "hanging out" there.

Howell went to appellant's house and looked in the garage and in the "spare room" but did not find her cat. She proceeded to appellant's bedroom to use his computer. While using it, Howell saw that appellant's "big desk-top" calendar, which was on the same desk as the computer, had certain dates circled. She wanted to write down what dates were marked—and appellant had previously given her permission to look in the desk drawer for paper, pencils, or pens—so she began looking for a piece of paper and pencil in the desk drawer. In it, she found some paper and "flipped through something," discovering a deposit slip from her checkbook. Howell testified that she had never given appellant a bank deposit slip. She then recalled that a few days earlier, while showing her something on his computer, appellant had opened a cabinet on his desk and she had seen a picture of herself, taken by her previous roommate, inside the cabinet. She saw that her picture was still there. She denied ever giving appellant her photograph. Howell "just felt sick" and "didn't know what to do," because all of this was "proving that something [was] wrong

4

here." Howell testified that she knew that the dates circled on appellant's calendar were "a reflection" of her, and after retrieving her calendar from her house, she confirmed that the circled days were times when she had gone out on a date or had a date at her house.

While the compact disc was "burning," Howell decided to look in appellant's attic. She stated that she was curious to see what "his attic was like" because appellant had mentioned sharing Internet service with her by "running a cable line into [her] house through the attic." She denied that appellant ever gave her oral or written notice that he did not want her going into his attic. She also denied that the attic had anything covering it. After taking a couple of steps on a ladder, Howell's collarbone and head were through the attic's square opening, and she was able to see inside. There she discovered a tape recorder, a caller-identification box, a legal pad full of written information, and ear phones. On the legal pad, appellant had written information about Howell's friends, family, ex-boyfriends, and current boyfriend. Howell testified that what she had seen "was overwhelming."

She retrieved her digital camera from her home and returned to appellant's house with her boyfriend, who held the ladder while Howell took pictures of the items contained in the attic. Howell proceeded to the police department. Subsequently, a search warrant was issued based on the information and pictures that Howell provided.

Alleging that Howell was a criminal trespasser, appellant filed a motion to suppress the evidence gathered in the search and Howell's testimony. Appellant complained that the evidence against him was the "fruit of the poisonous tree" discovered as the result of Howell's criminal trespass in his house and that the search warrant was based on knowledge that Howell gained

5

illegally as a result of her trespass. *See* Tex. Code Crim. Proc. Ann. art. 38.23; *see also* Tex. Penal Code Ann. § 30.05. The motion was denied, and appellant pleaded guilty. The court sentenced appellant to twenty months' confinement but suspended imposition of the sentence and placed him on community supervision for five years. This appeal followed.

## DISCUSSION

### Standard of review

A trial judge is the sole trier of fact at a suppression hearing and evaluates witness testimony and credibility. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony because the trial court observes the demeanor and appearance of a witness. *State v. Gray*, 158 S.W.3d 465, 466-67 (Tex. Crim. App. 2005).

When we review a trial court's ruling on a motion to suppress, we give great deference to the court's determination of historical facts while reviewing its application of the law de novo. *Torres*, 182 S.W.3d at 902 (citing *Maxwell*, 73 S.W.3d at 281). Because no findings of fact were filed in this case, we view the evidence in a light most favorable to the trial court's ruling and assume that the court made implicit findings of fact that support its ruling, as long as the findings are supported by the record. *Id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citing *Romero*, 800 S.W.2d at 543).

6

**Article 38.23 and criminal trespass**

Appellant contends that the search warrant for his house was unlawful because the information contained therein was illegally obtained as a result of Howell's criminal trespass. *See Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980). He argues that Howell's testimony and the physical evidence obtained after the search warrant was issued should be suppressed pursuant to article 38.23 of the code of criminal procedure.

Article 38.23 provides, "No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a). "Article 38.23(a) means what it says: that evidence illegally obtained by an 'officer or other person' ought be suppressed." *Jenschke v. State*, 147 S.W.3d 398, 400 (Tex. Crim. App. 2004) (quoting *State v. Johnson*, 939 S.W.2d 586, 588 (Tex. Crim. App. 1996)). Not all evidence of a crime obtained by a private citizen implicates article 38.23. *See id.* at 402 (holding that conduct of private citizen who takes property that is evidence of crime without effective consent of owner and with intent to turn over property to officer may be non-criminal); *see also Krause v. State*, No. 01-05-01136-CR, 2007 Tex. App. LEXIS 5461, at *20-21 (Tex. App.—Houston [1st Dist.] July 12, 2007, pet. filed) (holding that woman's entry into resale store and appellant's RV home, which yielded evidence of appellant's involvement in child pornography, was not theft or burglary because citizen had express purpose of turning it over to authorities); *Guerrero v. State*, No. 08-05-00284-CR, 2007 Tex. App. LEXIS 3837, at *24 (Tex. App.—El Paso May 17, 2007, pet. filed) (holding that woman's taking of videotape

7

from appellant's house, which was evidence of appellant's improper photography or visual recording of her, was not violation of any law and not subject to suppression).

A person commits the offense of criminal trespass by entering or remaining on or in property of another without effective consent or by entering or remaining in a building of another without effective consent when the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so. Tex. Penal Code Ann. § 30.05(a). "Notice" is statutorily defined and includes: oral or written communication by the owner; fencing or other enclosure designed to exclude intruders; and a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden. *See id*. § 30.05(b)(2)(A)-(C).

**Analysis**

The State urges that it could not prosecute Howell for criminal trespass because there is no evidence that she had notice that entry was forbidden. *See id*. § 30.05. Appellant responds that homeowners should not be required to post "no trespassing" signs in various areas in their homes in order to exclude individuals who have limited authority to be there. The success of appellant's motion initially hinges on whether Howell entered or remained on or in appellant's property without effective consent. *See id*.

It is undisputed that appellant gave Howell permission to enter his house in order to use his computer—which is precisely what she was doing when she noticed the dates. Furthermore, appellant gave Howell general consent to be in his house and garage in order to look for her cat.

8

Howell testified that on other occasions, she had found her cat in appellant's garage and spare bedroom. Appellant asserts that Howell's entry into the attic constituted criminal trespass because the attic was eight feet high and the ladder was ten feet away; thus, her cat could not have been in the attic.

But there was no evidence that Howell had ever been told that she was not permitted in appellant's attic or any other location of his residence. *See id*. § 30.05(a). The evidence suggests that Howell had general permission—effective consent—to be in appellant's house on July 9 to use his computer and look for her cat. Although appellant urges that he did not give her permission to look for her cat that day, and that she could not have been looking for her cat in the attic, Howell testified that appellant advised her specifically to check the garage where he had seen her cat "hanging out." Furthermore, Howell testified that one reason that she was curious about the attic was appellant's reference to sharing Internet service with her by "running a cable line into [her] house through the attic." Appellant presented no evidence that he imposed any limits on Howell's access, not even by locking a door inside the house or by securing, fastening, or locking any covering to the attic.

On rehearing, appellant attempts to characterize the consent that he gave to Howell as "limited to a specific purpose," arguing that her second and third entries into his home were unauthorized and occurred after his consent had "terminated." He cites *Tatum v. State* in support of his limited-consent assertion. *See* 649 S.W.2d 139, 142 (Tex. App.—Fort Worth 1983, pet. ref'd). His reliance on that case is misplaced. In *Tatum*, Jane Adams loaned her car keys, which were on the same key ring as her fiancé's house key, to the accused. *Id*. Adams had allowed Tatum to enter

9

the house but Hastings, her fiancé, never consented. *Id*. The court noted that Tatum's use of the house key to enter the house late at night and assault Adams's fiancé was outside the scope of any consent that Adams might have given to Tatum. *Id*. But the court concluded that even if Adams were a co-tenant, Hastings was the owner identified in the indictment and it was "undisputed that he never gave consent to enter." *Id*.

Unlike *Tatum*, this record fails to support the assertion that the property owner "never gave consent to enter." Appellant gave Howell general consent to enter his house and encouraged her to do so, inviting her to search for her cat (who was in the garage "a lot of times"), to clean his house at unscheduled intervals, to feed his cat while he was away during hunting season, to use his telephone, to search inside his desk for paper and pencils or pens, to watch his television, to use his shower, and to use his computer for Internet access, "burning" compact discs, and paying her bills. Nothing in the record suggests that appellant asked Howell to return the key afterward. *See* Tex. Penal Code Ann. § 30.05(a); *see also House v. State*, No. 07-96-0088-CR, 1996 Tex. App. LEXIS 5354, at *8 (Tex. App.—Amarillo Dec. 4, 1996, no pet.) ("To commit criminal trespass when an initial entry was consensual, not only must consent be withdrawn, the person must also have 'received notice to depart but failed to do so.'").

The trial judge is the sole trier of fact. *Maxwell*, 73 S.W.3d at 281. He evaluates witness testimony and credibility, and is entitled to believe or disbelieve all or any part of a witness's testimony because he observes the demeanor and appearance of a witness. *Gray*, 158 S.W.3d at 466-67. Viewing the evidence in this record in a light most favorable to the trial court's ruling and assuming that the court made implicit findings of fact in support of its ruling based on the evidence,

10

*see Torres*, 182 S.W.3d at 855, we hold that the court, as the sole trier of fact, could have reasonably found that Howell had effective consent to enter appellant's house, including his attic, from which she was not restricted access. Therefore, we need not determine whether a violation of the criminal-trespass statute invokes article 38.23 because it was not implicated in this case. *See Phillips v. State*, 161 S.W.3d 511, 515 (Tex. Crim. App. 2005) (reasoning that article 38.23 was not implicated because no laws were violated and concluding that trial judge did not err in denying motion to suppress; court did not reach issue about whether violation of criminal-trespass statute invoked article 38.23). We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed on Motion for Rehearing

Filed:   August 28, 2007

Do Not Publish

11